UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORI JACOBS, | CASE NO. 3:17-cv-05988-RJB |
| Plaintiff, | ORDER ON (1) PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (2) DEFENDANT WAL-MART STORES, INC.'S MOTION FOR SUMMARY JUDGMENT DISMISSAL, OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES; AND (3) PLAINTIFF'S MOTION TO SEAL |
| v. | |
| WAL-MART STORES, INC., | |
| Defendant. | |

BEFORE THE COURT are two cross motions for summary judgment, Plaintiff's Motion for Partial Summary Judgment (Dkt. 71) and Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment Dismissal, Or, In the Alternative, Motion for Partial Summary Judgment on Damages (Dkt. 102). Both parties have lodged related motions to strike, and Plaintiff has filed a motion to seal *pro forma*. Dkt. 158. The Court has considered both summary judgment motions

and the remainder of the file herein. The Court deems oral argument unnecessary. As discussed

below, both motions for summary judgment should be denied.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

A.  Facts.

The facts recited herein are agreed, except where noted.

Plaintiff Lori Wells has worked as a pharmacist for Defendant Wal-Mart since 2007. Dkt.

73 at ¶3. She was diagnosed with cerebral palsy at birth and has suffered from multiple sclerosis

since 1978. Dkt. 73 at ¶4. In April of 2016, Defendant notified its pharmacists, including

Plaintiff, that effective April 16, 2017, all pharmacists would be required to be "immunization

certified" to "simultaneously improve health outcomes while growing our pharmacy business."

Dkt. 133; Dkt. 165 at 49, 50. Consistent with other formal communications of Defendant, in

2016, Defendant changed the job description for Plaintiff's position, Staff Pharmacist, modifying

the stated "Essential Job Functions" to include a requirement that pharmacists "[p]rovide

comprehensive care to customers by . . . administering immunizations." *Compare* Dkt. 76 at 33;

Dkt. 76 at 37.

Plaintiff has worked as a pharmacist at two Wal-Mart stores, in Sequim and Port Angeles,

Washington, which are about ten to fifteen minutes' drive from Plaintiff's residence. Dkt. 73 at

¶6, 7. In 2014, the Port Angeles store began providing immunizations through injection to the

public. Dkt. 73 at ¶7. Due to Plaintiff's medical condition, she did not feel comfortable giving

immunizations. Dkt. 73 at ¶3. When working at a double-staffed pharmacy, Plaintiff reports that

she has referred immunization customers to her pharmacist coworker, and when not double-

staffed, Plaintiff has asked customers to return at another time, which Plaintiff estimates

happened less than six (6) times between 2014 and her separation on April 15, 2017. Dkt. 73 at

¶3. *But see* Dkt. 103-1 at 47 (Plaintiff reporting that asking customer to return occurs once or twice a week during busy season).

Prior to her separation, on January 25, 2017, Plaintiff submitted to Defendant a written Request for Accommodation that requested a "permanent exemption" from "administering immunizations." Dkt. 73 at 13, 14; Dkt. 103-1 at 38, 39. In email correspondence to Cherie Hop-Jurado, Health and Wellness Director, NW Washington Olympic Peninsula region, on February 5, 2017, Plaintiff explained that she "inject[s] [herself] weekly in [her] thigh" and "sometimes all goes well but other times that is not the case. I really enjoy my job, but I am not able to control my hands to feel comfortable immunizing the general public." Dkt. 125. The submission included a doctor's note, dated August 16, 2016, wherein a doctor states that "combined afflictions [of cerebral palsy and multiple sclerosis] cause her to be unable to perform immunizations to the general public." Dkt. 73 at 16; Dkt. 103-1 at 41.

On February 6, 2017, in a letter from Defendant's Accommodation Service Center, Defendant informed Plaintiff that her request to be excused from administering immunization was "temporarily approved through April 15, 2017 . . . because [it] is not yet considered to be a requirement for your position relative to your hire date." Dkt. 116. The letter warned that "[o]nce administering immunizations becomes an essential function of your position on April 15, 2017, we will no longer be able to accommodate you in your current position[.]" Dkt. 116. According to the letter, "the company would like to offer an alternative accommodation of reassignment . . . [and] [i]f a suitable position is currently available on April 16, 2017, [Plaintiff] will be offered the position." Dkt. 116. Plaintiff submitted a formal Request for Reconsideration on February 22, 2017, positing that although she "lacks the fine motor skills required to administer injections,"

Plaintiff could be easily accommodated by asking customers to return when another immunizing pharmacist is available. Dkt. 103-1 at 48.

On March 22, 2018, Plaintiff emailed Ms. Hope-Jurado, stating that "[s]ince my only issue involves dexterity necessary to hold a syringe, place the needle and simultaneously inject a vaccine, I believe a reasonable accommodation is to have Wal-Mart allow me to use an injector pen, which I can do." Dkt. 103-2 at 70. Plaintiff also completed a formal, handwritten accommodation request form. Dkt. 73 at 21. In a subsequent email exchange, Plaintiff emailed links to information about brand-name injector pens. Dkt. 103-2 at 72.

On April 16, 2017, Plaintiff was placed on "reassignment leave," a determination the reconsideration of which was denied by Defendant. Dkts. 128, 129.

In a May 10, 2017 letter from the Accommodation Service Center denying Plaintiff's request for reconsideration, Defendant reaffirmed that the request to be permanently excused from administering immunizations "cannot be approved [it] would require that we excuse the performance of an essential job function . . . [but] [b]ased on our commitment to reasonable [*sic*] accommodate all associates with disabilities, we offered reassignment as an equally effective accommodation." Dkt. 118.

By letter dated May 22, 2018, Defendant notified Plaintiff of its final determination denying the injector pen accommodation request, because "injection pens are not compatible with the immunizations that are provided in the Pharmacy." Dkt. 131. The letter also notified Plaintiff that because all leave had been used, thirty (30) days remained for Plaintiff to look for a position, after which "if no position is found, this will result in termination." Dkt. 131. On June 1, 2018, Ms. Hope-Jurado emailed Plaintiff to inquire whether Plaintiff wanted "to talk about the letter," and Plaintiff directed Ms. Hope-Jurado to speak with her attorney. Dkt. 165 at 37.

Retroactive to April 16, 2017, Plaintiff has received disability benefits, an award based on a Social Security Administration (SSA) "disabled" finding. Dkt. 165 at 12. Prior to receiving SSA disability benefits, Plaintiff has received short-term benefits from a third-party, Lincoln Financial Group. *See* Dkt. 165 at 16-20; Dkt. 171 at 48-53.

Defendant, either through its Accommodation Service Center or its third party designee, Sedgwick, has made inquiries into or arguably considered three accommodations: double coverage, requesting that customers return at another time, and use of an injector pen.

According to Ms. Hope-Jurado, pharmacists are staffed for double coverage a few hours one or two days per week in Port Angeles and three to five hours in Sequim. Dkt. 72-2 at 35-37; Dkt. 120 at 6, 7. Ms. Hope-Jurado testified that although she "contemplated" double coverage as an accommodation, it was not offered to Plaintiff. Dkt. 72-2 at 42, 43. Defendant, through Joe Rubino of the Accommodation Service Center, explored double coverage as an accommodation, Dkt. 72-1 at 32, 33 and Dkt. 120 at 7, and arguably offered accommodations to at least two others, by offering double or triple coverage to a pharmacist with bilateral carpal tunnel, Dkt. 141, and waiving the immunization administration requirement for a pharmacist as to certain, but not all immunizations. Dkt. 159.

While there is no dispute that Plaintiff requested that she be allowed to request customers to return at another time as an accommodation, the business cost of this accommodation is disputed by the parties. According to testimony of Mr. Rubino, ACS team member, not requiring pharmacists to administer immunizations would place Defendant at a "competitive disadvantage," although he concedes—and Plaintiff is quick to note—that to Mr. Rubino's knowledge, Defendant has not conducted any economic analysis on the subject. Dkt. 72-1 at 69, 71, 72.

1    Regarding the injector pen, according to Ms. Hope-Jurado, Defendant looked into the

2    possibility of its use, but ultimately rejected its use for Plaintiff's disability. Dkt. 120 at 11. Ms.

3    Hope-Jurado has explained that one particular type of injector pen, PharmaJet®, is "only FDA-

4    rated for Afluria . . . out of 11 other [influenza vaccines] . . . And in this case this year, Afluria

5    wasn't [CDC] recommended, so we don't carry Afluria in our stores." Dkt. 120 at 11. Although

6    she has not personally used an injector pen, Ms. Hope-Jurado gathered information about

7    injector pens from other sources, remarking that "[t]here's still an opportunity for misfire. It's

8    loud. It does hurt. It kind of startles people [and] . . . could fail to give the full dose." Dkt. 120 at

9    11. Defendant's expert, Dr. Ann Wheeler, similarly has offered her opinion that the PharmaJet®

10   "should not be considered an acceptable alternative to the traditional method of . . . using a

11   traditional syringe and needle." Dkt. 103-2 at 7. In her opinion, use of an injector pen is

12   inadvisable, because its use has not been FDA-authorized and would violate terms of the

13   Collective Drug Therapy Agreement (CDTA), a contract between pharmacists and providers

14   granting pharmacists authority to prescribe, with limitations. Dkt. 103-2 at 7.

15        The opinion of Plaintiff's expert, Mr. Donald Downing, contrasts with the testimony of

16   Ms. Hope-Jurado and expert opinion of Dr. Wheeler. According to Mr. Downing, the FDA

17   "regulates the approval of drugs and medical devices for marketing . . . [h]owever, the use of an

18   FDA approved drug or device is regulated only by the standard of practice." Dkt. 156 at ¶6. Mr.

19   Downing further opines, although using certain injector pens would be off-label, a/k/a not FDA

20   approved, under the relevant CDTA, it is within the authority and discretion of the individual

21   pharmacist to decide if and when to use injector pens to administer immunizations. Dkt. 156 at

22   ¶¶5-7.

23

24

B.  Procedural history, claims, and pending motions.

Plaintiff initiated this case by filing of the Complaint on November 28, 2017. Dkt. 1. The Complaint alleges two causes of action, violations of the Americans with Disabilities Act (ADA) and Washington Law Against Discrimination (WLAD). It is alleged that Defendant violated both the ADA and WLAD in two ways, by "failing to provide reasonable accommodation for her disability," and by "terminating her employment based on her disability." Dkt. 1 at ¶33. These two theories, failure to make reasonable accommodations and disability discrimination, form the basis for two claims for each cause of action. Dkt. 1 at ¶¶29-34. The Complaint seeks monetary damages, including punitive damages, and reinstatement of Plaintiff's employment. Dkt. 1 at 6, 7.

Plaintiff filed a Motion for Partial Summary Judgment on November 8, 2018. Dkt. 71. The motion argues the merits of the claims and additionally requests that Defendant be precluded from pleading two affirmative defenses, failure to mitigate and undue burden. Dkt 71 at 22-24. Without reaching the merits of either defense, the Court granted Defendant leave to amend Defendant's Answer. Dkt. 145 at 7.

Plaintiff's Motion for Partial Summary Judgment was properly noted for November 30, 2018. Dkt. 71. *See* LCR 7(d). In Plaintiff's Reply, filed November 30, 2018, Plaintiff moved strike the Declaration of Ms. Susanne Hiland, Dkt. 105, which Defendant attached to its Response. Dkt. 138. *See* Dkt. 107. Defendant filed an "Opposition to Plaintiff's Motion to Strike Susanne Hiland Declaration" on December 17, 2018. Dkt. 154. *But see* LCR 7(g)(2).

Defendant filed a Motion for Summary Judgment on November 26, 2018. Dkt. 102. Attached to Plaintiff's Response, Plaintiff attached the Declaration of Mr. Donald Downing, which Defendant moves to strike. Dkt. 164 at 2. In Plaintiff's Surreply, which responds to

Defendant's motion to strike, Plaintiff filed a second motion to strike. The motion requests to strike two exhibits, Exhibits B and C, to the Declaration of Lisa Wong Lackland. Dkt. 170 at 4-6. The Court gave Defendant the opportunity to file a response to the second motion to strike. Dkt. 176. *See* Dkt. 177.

Pursuant to a Stipulated Protective Order, Dkt. 17, Plaintiff has *pro forma* moved to seal an exhibit to her Response to Defendant's Motion for Summary Judgment. Dkt. 158.

The case is set for trial on February 25, 2019. Dkt. 13.

## II.   <u>STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## III. <u>DISCUSSION</u>

A. <u>Motions to strike and motion to seal.</u>

 1. *Plaintiff's Motion to Strike Declaration of Defendant's Witness Susanne Hiland (Dkt. 138 at 3)*

Plaintiff argues that the declaration of Ms. Susanne Hiland should be stricken, because the witness was not disclosed until November 26, 2018, when Defendant filed its Response to Plaintiff's motion. The untimely disclosure is not harmless, Plaintiff contends, because other witnesses who testified on similar topics made "considerable admissions and concessions about the history of [the immunization] policy change," and allowing Defendant to switch out witnesses now is unfair and runs counter to Rule 26. Dkt. 138 at 3.

In response, Defendant downplays the harm to Plaintiff, analogizing this case to one where a court denied a motion to strike 129 late-disclosed declarations, noting that any prejudice could be cured by reopening discovery to depose the declarants. Dkt. 154 at 1, 2. In this case, there is only one witness, Defendant observes, with a witness declaration that "mirrors" the

testimony of another witness, and only four attached exhibits, two of which appear elsewhere in the record. Dkt. 154 at 1, 2.

Defendant's response to the motion to strike is problematic. First, not only was Defendant's disclosure of witness Ms. Hiland untimely, which Defendant acknowledges, but also, Defendant's response to Plaintiff's motion to strike was untimely, which Defendant has ignored. Defendant "opposition," which is a Surreply, *see* LCR 7(g)(2), must be filed within five (5) days of the Reply. Plaintiff's Reply was filed November 30, 2018, but Defendant's pleading was not filed until December 17, 2018, with no explanation for the delay.

Second, if, as Defendant represents, Ms. Hiland's declaration "mirrors" another witness and the exhibits appear elsewhere in the record, her declaration is superfluous. But if Ms. Hiland's declaration adds important substance to Defendant's Response, she should have been disclosed, and Plaintiff should have had the opportunity to depose the witness. Defendant's briefing also fails to address why two exhibits, B and D, do not appear elsewhere in the record or why they were not attached previously to other declarations. Defendant's Surreply leaves open questions about the record filed by Defendant, and has left the undersigned uncomfortable with Defendant's discovery efforts. Nonetheless, because of the importance of reaching the merits in every case, Plaintiff's motion to strike should be denied.

Plaintiff's motion to strike (Dkt. 138 at 3) is DENIED. The discovery deadline is HEREBY EXTENDED until February 1, 2019, or a date agreeable to both parties, for the limited purpose of deposing Ms. Hiland, if Plaintiff so choses, at Defendant's expense.

2. *Defendant's Motion to Strike Declaration of Plaintiff's Expert Donald Downing (Dkt. 164 at 2)*

Defendant moves to strike the Declaration of Donald Downing, an exhibit to Plaintiff's Response to Defendant's motion. Dkt. 164 at 2, 3. *See* Dkt. 155, 156. Defendant makes three

arguments, none persuasive. First, Defendant contends that the declaration should be stricken as untimely, regardless of how it is styled by Plaintiff. This argument fails because it ignores the timing and proximity of Defendant's disclosures to the filing of Mr. Downing's declaration.

Second, Defendant argues that the declaration is not a true supplement or rebuttal because it does not address new facts. At the risk of weighing the evidence or too closely parsing the declaration, Plaintiff has made a sufficient showing about new content in the declaration, which is why Defendant has additional fodder for its third argument, that the declaration fails under FRE 70, an evidentiary rule that qualifies experts only where they possess the requisite "knowledge, skill, experience, training, or education." FRE 70. The Court respectfully declines to rule on what amounts to a motion in limine at this, the summary judgment stage. This conclusion is all the more strengthened in light of the fact that unlike Ms. Hiland, Mr. Downing was a properly-disclosed witness, and, in fact, was deposed.

The motion to strike the Declaration of Donald Downing (Dkt. 164 at 2) is DENIED.

3. *Motion to Strike Social Security Administration record attachments (Dkt. 170 at 4)*

In Plaintiff's Surreply, Plaintiff lodges a second motion to strike, requesting that two exhibits, Exhibits B and C, attached to the declaration of Lisa Wong Lackland, be stricken. Dkt. 170. *See* Dkt. 165. The exhibits are partial records from Plaintiff's SSA disability claim file. According to Plaintiff, Defendant received the SSA records, which were obtained from a third-party subpoena, on December 10, 2018, yet although Defendant used the records in a Reply brief, filed December 21, 2018, Defendant failed to disclose all records until December 28, 2018, and only after prodding by Plaintiff's counsel. Dkt. 170 at 4-6. Alternative to striking the exhibits, Plaintiff requests that the documents attached be reviewed "in the true context in

1  conjunction" with additional materials, previously withheld, but now filed by, Plaintiff. Dkt. 170

2  at 6.

3      In response, Defendant argues that Plaintiff herself had the documents in her own custody

4  and control, because they were submitted to the SSA by Plaintiff. Dkt. 177 at 1. Defendant has

5  not violated any discovery rule, Defendant urges, and after Plaintiff requested the discovery,

6  which Defendant was not obligated to give to Plaintiff, Defendant handed the discovery over

7  immediately. Dkt. 177 at 3, 4.

8      In an effort to reach the merits of this case, the motion to strike should be denied. In

9  fairness to Plaintiff, the Court has also considered exhibits attached to Plaintiff's Surreply. *See*

10 Dkt. 171.

11     Plaintiff's motion to strike (Dkt. 170 at 4) is DENIED.

12     *4.  Motion to Seal Exhibit 1 (Dkt. 158)*

13     Plaintiff has filed a motion to seal *pro forma* under the terms of a Stipulated Protective

14 Order. *See* Dkt. 17. The document at issue documents a sequence of correspondences among

15 several Wal-Mart employees about an accommodation request to the immunization policy at

16 issue. Dkt. 159 at 2-4. The correspondences pertain to another employee, whose identifying

17 information has been redacted. Dkt. 159.

18     The Court previously sealed a similar document. Dkt. 151. *See* Dkt. 141. With the

19 employee's identifying name redacted, there is no especially persuasive reason why the

20 correspondence should be sealed, but in the interest of consistency, for purposes of this motion,

21 the motion to seal (Dkt. 158) is GRANTED. Docket 159, Exhibit 1, SHALL remain sealed, but

22 this finding, and the finding as to Docket 141, *see* Dkt. 151, are made WITHOUT PREJUDICE

23 as to evidence considered at trial.

24

B. <u>Summary judgment on the merits.</u>

      *1. Legal background and organization of discussion on the merits.*

The Complaint alleges two claims, disability discrimination and failure to make reasonable accommodation, under both the ADA and the WLAD. Dkt. 1 at ¶¶29-34. The two types of claims overlap, but "'[a]n employer who discharges, reassigns, or harasses for a discriminatory reason faces a disparate treatment claim; an employer who fails to accommodate the employee's disability, faces an accommodation claim.'" *Pulcino v. Federal Express Corp.,* 141 Wn.2d 629, 640 (2000).

To prevail on a disability discrimination (disparate treatment) claim, the plaintiff must show: (1) that she is "disabled" under the ADA or the WLAD, (2) that she is a "qualified individual," that is, an individual able to perform the essential job functions with or without reasonable accommodation, and (3) the defendant terminated her employment because of her disability. *Kees v. Wallenstein*, 973 F.Supp. 1191, 1193 (W.D.Wash. 1997).

To prevail on a claim for failure to make reasonable accommodation, the plaintiff must show: (1) that she is disabled under the ADA, (2) that she is a "qualified individual" able to perform the essential job functions with or without reasonable accommodation, and (3) she suffered an adverse employment action because of her disability. *Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1237 (9th Cir. 2012). A reasonable accommodation claim brought under the WLAD shares the first two elements as an ADA claim, adding a slightly different third element, that the aggrieved employee was not reasonably accommodated. *Dedman v. Wash. Personnel Appeals Board*, 98 Wn.App. 471 (Div. II 1999). Although not consequential to this motion, the ADA and WLAD employ differing causation standards: the "motivating factor" causation standard applies to ADA claims, whereas the "substantial factor" standard

applies to WLAD claims. *Head v. Glacier*, 43 F.3d 1053 1065-66 (9th Cir. 2005); *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 311 (1995).

On the merits, Defendant makes three primary arguments: (1) Plaintiff cannot perform an essential job function and is therefore not a "qualified individual" under the ADA and the WLAD; (2) Plaintiff has failed to meet her burden to show that a reasonable accommodation was available; and (3) Plaintiff is judicially estopped from advancing this litigation, because she is "disabled" for purposes of qualifying for and receiving SSA disability benefits. Dkt. 102 at 10-23. *See also*, Dkt. 107 at 4-10. Because Plaintiff's arguments can also be organized according to these three core arguments, the parties' arguments on the merits will be organized below according to these three primary issues.

2. *Essential job function.*

By regulation, under the ADA, a person with a disability is a "qualified individual" if she can, with or without reasonable accommodation, perform the "essential functions" of the position. 29 C.F.R. § 1630.2(m). *Humphrey v. Memorial Hospitals, Assoc.*, 239 F.3d 1128, 1133 (9th Cir. 2001). "Essential functions" are defined as "fundamental job duties," not including "marginal functions of the position." A job function "may be considered essential" for many reasons, including:

(i) The function may be essential because the reason the position exists is to perform that function;

(ii) The function may be essential because of the limited number of <u>employees</u> available among whom the performance of that job function can be distributed; and/or

(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

§ 1630.2(n)(2). Evidence of whether a function is essential includes:

(i)     The employer's judgment as to which functions are essential;

**(ii)** Written job descriptions prepared before advertising or interviewing applicants for the job;

**(iii)** The amount of time spent on the job performing the function;

**(iv)** The consequences of not requiring the incumbent to perform the function;

. . .

**(vi)** The work experience of past incumbents in the job; and/or

**(vii)** The current work experience of incumbents in similar jobs.

§ 1630.2(n)(3). "Although the plaintiff bears the ultimate burden of persuading the fact finder that [she] can perform the job's essential functions . . . an employer who disputes the plaintiff's claim that he can perform the essential functions must put forth the evidence establishing those functions." *Bates v. United States Parcel Svc., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007).

Both parties have devoted significant ink to the issue of whether administering immunizations is an essential job function, but issues of fact are readily apparent. By way of example, in all official communications to Plaintiff about her requests for accommodation, Defendant uniformly refers to administering immunizations as an essential job function. Dkt. 76 at 37; Dkt. 133; Dkt. 165 at 49, 50. *See* § 1630(n)(2)(i). However, at least in Plaintiff's experience, the number of immunizations in the aggregate amounts to a nominal amount of time. Dkt. 73 at ¶3. *But see* Dkt. 103-1 at 47. *See also*, Dkt. 156 at 4. *See* § 1630(n)(2)(iii). Although Defendant maintains that the accommodation of requesting customers to return at another time would be costly, Plaintiff's experience with customers and the testimony of Plaintiff's expert, Mr. Downing, point to the opposite. Dkt. 72-1 at 72; Dkt. 73 at ¶3; Dkt. 103-1 at 47; Dkt. 156 at 4. *See* § 1630(n)(2)(iv). And the current work experience others, whom Defendant has excused from certain pharmacy duties for other reasons, in Plaintiff's view, may undermine the

conclusion that that administering immunizations is an essential job function. Dkts. 141, 159. *See* § 1630(n)(vii).

In conclusion, an issue of fact exists as to whether administering immunizations is an essential job function of a staff pharmacist. To that extent, both motions for summary judgment are HEREBY DENIED.

      *3. Reasonable accommodation.*

The plaintiff has the burden to show the existence of a reasonable accommodation that would have enabled her to perform the essential functions of an available job. *Dark v. Curry Cty.*, 451 F.3d 1078, 1088 (9th Cir. 2006). The term "reasonable accommodation" means, *inter alia*, modifications or adjustments to . . . the manner or circumstances under which the position . . . is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that positions. § 1630(o)(1)(ii). This "may include but is not limited to . . . job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices . . . and other similar accommodations." *Id*. at (2).

Under Washington law, reasonable accommodation "means measures that [ ] enable . . . the proper performance of the particular job held . . . [and] enable the enjoyment of equal benefits, privileges, or terms and conditions of employment." WAC 162-22-065(1). "Possible examples" of reasonable accommodation includes:

    (a) Adjustments in job duties, work schedules, or scope of work;

    (b) Changes in the job setting or conditions of work;

    (c) Informing the employee of vacant positions and considering the employee for those positions for which the employee is qualified.

WAC 162-22-065(2).

ORDER ON (1) PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (2) DEFENDANT WAL-MART STORES, INC.'S MOTION FOR SUMMARY JUDGMENT DISMISSAL, OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES; AND (3) PLAINTIFF'S MOTION TO SEAL - 16

1    Plaintiff has raised three accommodations: double coverage, requesting customers to

2    return at another time, and use of an injector pen. Addressing the first two accommodations,

3    Defendant argues that they fail at law because both amount to nothing more than requests for

4    Plaintiff to be excused from an essential job function, rather than a means for Plaintiff to perform

5    the task. Dkt. 102 at 18, 19; Dkt. 164 at 13. A *bona fide* reasonable accommodation "can never . .

6    . eliminate[e] an essential function of a job . . . or shift an [essential job function] onto others,"

7    Defendant contends. Dkt. 102 at 19.

8    Defendant's argument fails, because it assumes that administering immunizations is an

9    essential job function, which, as discussed above, is a fact-intensive, unresolved issue. The

10   argument also fails for want of authority. Defendant bases the argument on only persuasive, not

11   binding authority, applicable only directly to ADA, not WLAD, claims. *See* Dkt. 102 at 19.

12   Addressing the third accommodation, use of an injector pen, Defendant takes issue with

13   the timing of the request, made in March of 2018, after the filing of this lawsuit, because,

14   Defendant argues, the Complaint does not "reflect this essential element of her case." Dkt. 102 at

15   20. The Complaint, fairly construed, alleges enough to give Defendant notice of such a claim,

16   but even if it did not, Defendant could hardly claim prejudice if the Complaint were to be

17   amended now, given that both sides have retained experts on the subject.

18   Next, Defendant argues that Plaintiff has not shown that she is physically capable of

19   using an injector pen, so she cannot, as a matter of law, show that Defendant should have

20   accommodated her by use of such a device. Dkt. 102 at 20. Plaintiff rebuts this conclusion,

21   where she has declared that she could use an injector pen, Dkt. 73 at 4, 21, 22, which is at least a

22   sufficient showing to create an issue of fact on the issue, especially because Defendant raised the

23

24

issue as the ostensible basis to compel a Rule 35 independent medical exam, and Defendant has apparently elected to forego the examination for strategic reasons.

Finally, Defendant argues that use of an injector pen is incompatible with Defendant's internal protocols; is not allowable under the CDTA, a document Defendant describes as a document legally binding to pharmacists administering immunizations; and violates the standard of care for pharmacists, because it lacks of FDA approval. Dkt. 102 at 19-21; Dkt. 107 at 7, 8; Dkt. 164 at 13, 14. Defendant's protocols may be evidence of whether an accommodation was reasonable, but are not grounds to defeat sending the issue to a trier of fact. The conclusion that an injector pen is not compatible with the CDTA has been rebutted by Plaintiff's expert, Mr. Downing, who has also explained a theory of FDA approval is no barrier to the elective use of injector pens by pharmacists in Washington. Dkt. 156 at ¶¶6, 7, 11.

Plaintiff's motion focuses on an altogether different reasonable accommodation aspect, the interactive process. According to Plaintiff, Defendant was not open with its processes, because the Accommodation Service Center employee advising Ms. Hope-Jurado, Mr. Rubino, knew double coverage was an accommodation made elsewhere, yet failed to discuss its applicability to Plaintiff's case, and Defendant's internal discussion about the basis for rejecting the injector pen as an accommodation lacked transparency. Dkt. 71 at 21, 22.

While Plaintiff may have raised a cognizable theory for a reasonable accommodation claim, summary judgment in favor of Plaintiff under this theory as a matter of law is not warranted. Issues of fact remain, for example, as to what Ms. Hope-Jurado and Accommodation Services Center knew and when they knew it. *See* Dkt. 72-1 at 32, 33; Dkt. 72-2 at 35-37; Dkts 141, 159.

In conclusion, an issue of fact exists as to whether Defendant made or should have made a reasonable accommodation to Plaintiff. To that extent, both motions for summary judgment are HEREBY DENIED.

### 4. Estoppel from claiming "disability."

Defendant does not dispute that Plaintiff is "disabled" for ADA and WLAD purposes *per se*, but argues that because Plaintiff collects SSA disability benefits, she cannot also be a "qualified individual" capable of performing an essential job function with (or without) reasonable accommodation. Dkt. 102 at 22, 23.

This argument fails, because it ignores *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999). In *Cleveland*, the Supreme Court considered the tension created where a person both applies for SSA disability benefits and pursues an ADA claim, holding:

> We believe that, in context, these two seemingly divergent statutory contentions are often consistent, each with the other. Thus pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA. Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation."

*Cleveland*, 526 U.S. at 797-98.

Applying *Cleveland*, Defendant's argument, that Plaintiff cannot litigate ADA and WLAD claims because she receives SSA disability benefits, falters. Plaintiff's SSA disability claim file is not the complete record as to Plaintiff's condition; Plaintiff's deposition, Plaintiff's declaration, and other medical records, if construed in Plaintiff's favor, can be read in harmony, rather than to be in conflict with, a finding of "disability" for SSA purposes. *See, e.g.,* Dkt. 73 at 4, 21, 22; Dkt. 165 at 12; Dkt. 171 at 48-70.

Defendant relies on *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1110 (9th Cir. 2000) for the argument that "someone who is totally disabled cannot sue under Title I's [ADA employment's] unambiguous provisions." Dkt. 164 at 3, 4. *Weyer* is analogous procedurally, because the Ninth Circuit addressed findings by a district court at summary judgment, but the case is factually distinguishable from the case at bar. In *Weyer*, the plaintiff "presented no evidence that she could perform the essential functions of her former employment position with or without reasonable accommodation," *Weyer*, 198 F.3d at 1109, whereas in this case, Plaintiff has strenuously objected to, and supported, a finding to the contrary. *See* Dkt. 73 at 4, 21, 22.

In conclusion, Defendant's argument for judicial estoppel is unavailing, and the request for summary judgment of dismissal on such grounds is DENIED.

The Court DENIES Plaintiff's and Defendant's motions for summary judgment on the merits, because neither the disability discrimination claims nor the reasonable accommodation claims can be decided in favor of either party as a matter of law.

## C. Other requests for partial summary judgment.

Beyond seeking summary judgment on the merits of the claims, both parties seek partial summary judgment on discrete issues.

Defendant argues: (1) damages should be barred or reduced, because Plaintiff has failed to mitigate damages, and (2) the request for punitive damages should be dismissed, because there is no evidence that Defendant acted with malice or reckless indifference. Dkt. 102 at 11, 23-25.

Plaintiff seeks to preclude Defendant from advancing at trial "the unpled affirmative defenses of failure to mitigate damages and undue hardship." Dkt. 71 at 1. (The Court also

addressed failure to mitigate and undue hardship affirmative defenses in part in the context of a motion to amend. Dkt. 145).

Issues raised by the parties can be consolidated into three discrete issues.

1.  *Failure to mitigate.*

Defendant argues that partial summary judgment should be granted in favor of Defendant for Plaintiff's failure to mitigate. Dkt. 102 at 11, 23-25.

Whether Plaintiff applied to every job she should have, e.g., jobs beyond a short commute from Plaintiff's residence, the extent to which Defendant assisted Plaintiff in her job search, whether Plaintiff should have applied to lower paying jobs, and whether Plaintiff's age played a factor as to her ability to get another job, are all disputed factual issues precluding summary judgment in favor of Defendant on the issue of failure to mitigate. *See* Dkt. 72-1 at 25; Dkt. 72-2 at 103, 105; Dkt. 120 at 10.

Plaintiff argues that Defendant has not disclosed through discovery any specific suitable positions that were available, limiting the jobs Plaintiff could actually apply to. Dkt. 71 at 23. According to Plaintiff, Defendant's own vocational rehabilitation witness testified that she "Didn't research the time period specifically in terms of job openings[.]" Dkt. 71 at 23, quoting Dkt. 72-2 at 105.

Both arguments go to the weight of the evidence.

Both motions are DENIED on the failure to mitigate issue.

2.  *Punitive damages.*

Defendant contends that because there is no evidence that Defendant acted with malice or reckless indifference in allegedly discriminating against Plaintiff, the request for punitive damages should be dismissed. Dkt. 102 at 11, 23-25.

Defendant's argument is unpersuasive, because although Plaintiff has not pointed to any 'smoking gun' statements, Plaintiff has substantiated facts that, together, and if construed in Plaintiff's favor, could lead a trier of fact to believe that Defendant acted with reckless indifference. Defendant's request to dismiss the remedy of punitive damages is DENIED.

    *3. Undue hardship.*

Plaintiff argues that Defendant has not disclosed "any" evidence to support the defense of undue hardship. Dkt. 71 at 24. In response, Defendant argues that it need not show undue burden, because Plaintiff has not met her burden as an employee to identify an accommodation that would allow her to perform her essential job duties. Dkt. 107 at 10.

Plaintiff's argument should be denied, because the record reflects that the evidence, when construed in Defendant's favor, precludes partial summary judgment on the issue. For example, Mr. Rubino testified that not requiring all pharmacists to administer immunizations would place Defendant at a competitive disadvantage. Dkt. 72-1 at 69. (He also conceded that he was aware of no reports or cost-benefit analysis on the same issue. Dkt. 72-1 at 69, 71, 72.)

Plaintiff's motion for partial summary judgment on the issue of undue hardship is DENIED.

In conclusion, none of the discrete issues raised by either party warrants partial summary judgment, and to that extent, the parties' motions are DENIED.

## IV. <u>ORDER</u>

Therefore, it is hereby **ORDERED** that:

1. Plaintiff's Motion to Strike the Declaration of Susanne Hiland (Dkt. 138 at 3) is DENIED.

2. Defendant's Motion to Strike the Declaration of Donald Downing (Dkt. 164 at 2) is DENIED.

3. Plaintiff's Motion to Strike Social Security Record Attachments (Dkt. 170 at 4) is DENIED.

4. Plaintiff's Motion to Seal (Dkt. 158) is GRANTED. Docket 159 SHALL remain sealed, but it shall remain sealed WITHOUT PREJUDICE as to evidence considered at trial.

5. Plaintiff's Motion for Partial Summary Judgment (Dkt. 71) is DENIED.

6. Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment Dismissal, Or, In the Alternative, Motion for Partial Summary Judgment on Damages (Dkt. 102) is DENIED.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 7th day of January, 2019.

ROBERT J. BRYAN
United States District Judge