UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORI JACOBS,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC., a Delaware corporation,<br><br>　　　　　　Defendant. | NO.  3:17-cv-5988-RJB<br><br>PLAINTIFF'S MEMORANDUM AND OFFER OF PROOF RE CURATIVE INSTRUCTION ON COLLATERAL SOURCE ISSUE AND ADDRESSING PARAMETERS OF PROPOSED TESTIMONY BY DEFENSE EXPERT WILLIAM PARTIN |

## I.　　INTRODUCTION

Contrary to the Court's order excluding all evidence or testimony regarding past or future collateral source benefits Plaintiff may receive, Walmart suggested to the jury that it is still providing health insurance to the Jacobs, which is only being provided as part of a collateral source -- the long term disability coverage Ms. Jacobs elected to purchase via premiums deducted from her pay.  This violated the Court's Order (Dkt. 231), and the Court provided an appropriate curative instruction to the jury to address this violation. Plaintiff is concerned that Defendant may attempt to suggest through testimony of its remaining witnesses, particularly Mr. Partin, that such health insurance benefits are being "paid by Walmart" and not from a collateral source and wants to bring this to the

Pltf Memo re Collateral Source Issues - 1 of 8
(3:17-cv-5988)
[4812-5696-6537]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

Court's attention in advance of further testimony to ensure no further violations are permitted and to ensure that Mr. Partin does not attempt to stray beyond the economic damages opinions for which he was disclosed as an expert or offer additional testimony on collateral . *See* Dkt. 24.

## II.   FACTUAL BACKGROUND

Before trial began, the Court granted Plaintiff's motion in limine to exclude all reference to collateral source benefits, including short-term disability, long-term disability and social security disability.  *See* Dkt. 187 pp. 3-5, and Dkt. 231 (minute order granting Plaintiff's Motion in Limine re collateral source benefits).

Ms. Jacobs elected to purchase long-term disability coverage, which was one of the many benefits offered in conjunction with her employment at Walmart (along with, short-term disability, medical, dental, vision, accidental death coverage, etc.).  See Trial Exs. 42 and 44 and Bloomfield Declaration re Collateral Source Issues ("Bloomfield Dec.") at Ex. A.  This was not paid for by Walmart, but was paid for by Ms. Jacobs through regular payroll deductions. *Id.*

Further, as part of the coverage provided by the Long-Term Disability benefits Ms. Jacobs purchased through Walmart, one of the benefits of the coverage was that if disabled, Ms. Jacobs could elect to continue to purchase her health insurance coverage through Walmart, still at her own expense. As Walmart explains in its "Associate Benefits Book":

### Continuing benefit coverage while disabled

> If you wish to continue medical, dental, vision, AD&D, optional associate and dependent life insurance, critical illness insurance and accident insurance coverage while you are receiving LTD benefits, you must make premium payments each pay period. These amounts will not be deducted from your LTD benefit payments. If you fail to pay your premiums for your

Pltf Memo re Collateral Source Issues - 2 of 8
(3:17-cv-5988)
[4812-5696-6537]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

other benefit plan(s), your benefits may be canceled. See the **Eligibility and enrollment** chapter for details.

Bloomfield Dec. Ex. B.

At the close of Mr. Jacobs' cross-examination, defense counsel asked the following question, which Mr. Jacobs answered:

> Q   And Walmart is still providing your wife and you health benefits, right?
> A   Yes.

Bloomfield Dec. Ex. C (Verbatim Report of Proceedings (March 1, 2019) at 68:23-25).

Following argument outside the presence of the jury, the Court instructed the jury as follows:

> THE COURT:  Ladies and gentlemen, Mr. Jacobs was testifying this morning. You are to disregard that portion of his testimony regarding healthcare benefits.

Bloomfield Dec. Ex. C at 75:15-17.

In addition, William Partin, an expert disclosed to provide opinions regarding Ms. Jacobs' economic loss, produced subsequent untimely reports after the close of discovery and after his October 22, 2018 deposition that involve liability issues outside his area of expertise as well as discussing collateral source benefits.  Bloomfield Dec. Ex. D. Plaintiff wishes to ensure that the Court is aware of this issue to avoid having to object and excuse the jury during Mr. Partin's testimony and raises these issues in advance.

### III.   LEGAL ANALYSIS

As previously explained to the Court, and for the reasons set forth in Plaintiff's Motions in Limine (Dkt. 187 pages 3-5), the only reason Ms. Jacobs continues to be able to maintain health insurance through Walmart is due to her decision to purchase long-

Pltf Memo re Collateral Source Issues - 3 of 8
(3:17-cv-5988)
[4812-5696-6537]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

term disability insurance. Without that – she would not be able to continue to pay for health insurance through contributions to Walmart's program.

While the Court addressed Defendant's initial violation with a curative instruction, Plaintiff is concerned that William Partin, a defense expert who was disclosed as an expert on Plaintiff's damages and economic losses, may attempt to testify on this point. Mr. Partin was disclosed as follows: "Mr. Partin will consider all data related to Plaintiff's damages claim and any data considered by Plaintiff's damages expert(s)." Dkt. 24 page 2. In his CV, Mr. Partin describes himself appropriately as having expertise in damages and income loss evaluation, appraisals and describes his expert witness services as follows: "Mr. Partin has served as an expert witness and appraiser in a variety of situations involving tracing financial transactions, documentation of illegal income, and the valuation of businesses, property, and future earnings potential." Dkt. 24 pages 8-9. He also notes that he has been qualified as an expert only "in the fields of economics, business valuation and accounting." However, Mr. Partin at the behest of Walmart, belatedly attempted to convert himself into a liability expert on retail pharmacy practices and "the field of consumer retail marketing and customer service."

Despite being identified as a damage witness, in an attempt to respond to Professor Downing's opinions[1], Walmart decided to have Mr. Partin offer numerous late-disclosed opinions after his October 22, 2018, deposition that are outside the scope of his damages expertise and qualifications. Some of those opinions are directed at suggesting that accommodating Ms. Jacobs would impact Walmart's **profits** – another

---

[1] As the Court will recall, Professor Downing, who had substantial experience as a Pharmacist and in the pharmacy business, described that it is routine to have to ask customers to come back or refer them out for a variety of reasons including level of stock, insurance issues, and similar matters and that performing the injection portion of immunization services was a minimal part of a Walmart pharmacist's job.

Pltf Memo re Collateral Source Issues - 4 of 8
(3:17-cv-5988)
[4812-5696-6537]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

subject the Court has excluded in ruling on motions in limine. Dkt. 213 at 3. Nevertheless, Mr. Partin offers the following "expert opinions":

1. The importance to being able to offer immunizations is demonstrated by the fact retail pharmacy industry has lobbied heavily to influence state lawmakers to allow pharmacists to provide immunizations.
2. Wal-Mart and its competitors viewed immunization services as an important driver of revenues for the pharmacy, in addition to a service that attracts customers to their store, increasing overall revenues
3. Pharmacies generate high profit margins on immunizations due to high reimbursement rates from insurers and generate ancillary sales in the pharmacy and throughout the store from shoppers who might otherwise not have come to the pharmacy.
4. A potential customer who was asked to return on another day to receive an immunization may travel to one of Wal-Mart's nearby competitors to seek the desired service.
5. The services offered by Wal-Mart can easily be substituted by products and services offered by its competitors. Customer preferences when it comes to mass market retailers are generally based upon convenience, price and service experience. Wal-Mart would be disadvantaged in this circumstance by harming two of those factors: convenience and service experience.
6. Any loss of customers who seek injections at Wal-Mart's competitors will result in lost revenues to the pharmacy and lost revenues to the rest of the store.
7. Each time Wal-Mart turns away a customer, it is at risk of losing revenues from that visit as well as potential future sales.

*See* Bloomfield Dec. Ex D (Partin Reports of 11/7/18 and 2/8/19).

As is evident, these are largely non-expert opinions that are not offered with a conclusion on "a more probable than not" basis. Mr. Partin eventually does offer the conclusion that **"the loss of revenue that would likely be realized by Walmart as a result of turning away injection requests cannot be calculated based on the information provided."** As a result, the preceeding two pages outlining Mr. Partin's argumentative summations are irrelevant. Bloomfield Dec. Ex. D (11/7/18 report).

Pltf Memo re Collateral Source Issues - 5 of 8
(3:17-cv-5988)
[4812-5696-6537]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

Mr. Partin then claims accommodating Ms. Jacobs would require hiring another full time pharmacist, which is also an area outside his expertise. Leaving no stone unturned, he concludes with a swipe at the PharmaJet option stating that Downing's failure to discuss training costs and potential liability concerns show that it was not a reasonable form of accommodation, make the use of this product an unreasonable accommodation. As this Court is aware, Walmart never engaged in any cost benefit analysis of any accommodation for Ms. Jacobs and cannot now put up Mr. Partin, to trumpet conclusory opinions supporting Walmart's arguments.

## IV.  CONCLUSION

For the above reasons, Plaintiff asks that the Court ensure that there are no further attempts to interject collateral source information or suggest to the jury that Walmart is providing Plaintiff with medical coverage of its own volition or to bring any discussion of Walmart profits or lost revenues into the picture when all agree – even Mr. Partin – that there is no way to calculate what if any revenues would likely be lost. Moreover, to avoid unnecessary interruptions of the testimony of Mr. Partin, Plaintiff raises these issues now to provide the court background and to advise the Court of the likely need to voir dire this witness should Defendant plan to offer opinions outside the scope of Ms. Jacobs' economic losses, or any opinions regarding the claimed impact on Walmart's revenue – which he could not calculate. Critically, various statements in Mr. Partin's reports, which would violate the Court's recent Order on Motions in Limine, are outside the scope of his expertise, and are irrelevant and merely parrot Walmart's arguments (Nov. 2018 Report) or involve entirely collateral source matters (Feb. 2019 Report) should not be allowed.

Pltf Memo re Collateral Source Issues - 6 of 8
(3:17-cv-5988)
[4812-5696-6537]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

1  Dated this 3rd day of March, 2019.

GORDON THOMAS HONEYWELL LLP

By_____
Stephanie Bloomfield, WSBA No. 24251
sbloomfield@gth-law.com
James Water Beck, WSBA NO. 34208
jbeck@gth-law.com
Attorneys for Plaintiff

Pltf Memo re Collateral Source Issues - 7 of 8
(3:17-cv-5988)
[4812-5696-6537]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

DECLARATION OF SERVICE

I hereby certify that on March 3, 2019, pursuant to Federal Rule of Civil Procedure 5(b), the foregoing document was served upon the counsel of record via email: therein:

| | |
|---|---|
| Laura E. Kruse | ☐ Via Legal Messenger |
| Lisa Wong Lackland | ☐ Via U.S. Mail |
| Nicole Brodie Jackson | ☐ Via Facsimile: |
| Steven Goldstein | ☒ Via CM/ECF |
| S. Karen Bamberger | ☐ Via E-Service Agreement |

lkruse@bpmlaw.com
llackland@bpmlaw.com
nbrodiejackson@bpmlaw.com
sgoldstein@bpmlaw.com
kbamberger@bpmlaw.com
*Attorneys for Defendant*

      /s/   James W. Beck
      Gordon Thomas Honeywell LLP

Pltf Memo re Collateral Source Issues - 8 of 8
(3:17-cv-5988)
[4812-5696-6537]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565